UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>DANE PAQUETTE, )<br>)<br>Defendant ) | Crim. No. 04-10-B-W |

**RECOMMENDED DECISION ON MOTION TO SUPPRESS**

Dane Paquette is charged in an indictment with two counts of possession of unregistered firearms, in violation of Title 26, United States Code, Section 5861(d). Paquette has moved to suppress the firearms, which he maintains were discovered pursuant to the execution of an unconstitutionally general portion of a search warrant. I held a telephone conference on March 25, 2005, in order to determine whether Paquette or the Government wished to have an evidentiary hearing on the motion. Both agreed that an evidentiary hearing was not necessary at this juncture. Paquette, however, requested that an evidentiary hearing be held if the court concludes that the "good faith" exception to the warrant requirement affords the only basis available to prevent the exclusion of the evidence. I recommend that the court adopt the following factual findings and deny the motion to suppress.

## Background

On September 14, 2003, a judge of the Maine District Court executed a nighttime, no-knock warrant to search apartment 9 of a multi-unit apartment complex located on Route 201 in Vassalboro, which was at that time the premises of one Jason Harfoush and a black male identified only as "J." The warrant described the place to be searched as a "residence," described

the residence as "a first floor front apartment (apartment #9)" and authorized officers to search that "residence" and also "motor vehicles that are present at, and/or arrive at said residence." The affidavit submitted in support of the warrant recited facts and circumstances that unquestionably gave rise to probable cause to believe that the occupants of the residence were trafficking in scheduled drugs and that narcotics, other evidence of drug trafficking and other contraband would likely be discovered at the residence, on the persons of those found at the residence or within motor vehicles owned or operated by those present at or arriving at the residence during the execution of the warrant. Among the many articles of property to be searched for, the warrant indicated that the officers might seek "firearms in close proximity to illicit drugs and contraband."

   Deputies from the Kennebec and Somerset County Sheriff's Office executed the warrant on September 14, 2003. The report in the record reflects that the officers forcibly entered the residence unannounced and discovered inside three individuals, none of whom resided at the residence. Questioning by the officers revealed the individuals to be David Peachey, Dane Paquette and Joni Dorage. According to the supplemental report of Detective Tom Rourke, he interviewed Ms. Dorage, who informed him that the three had recently arrived in Maine from the State of Washington and had been staying at different residences since then. A search of the vehicle in which the three were traveling, and which is or was owned by Ms. Dorage, produced three firearms, two of which were short-barreled shotguns. According to a report prepared by Corporal Jeremy Damren, he brought Dane Paquette outside the residence after the three were secured and gave Paquette a Miranda warning. Paquette indicated that he understood the warning. Thereafter Paquette stated in response to questioning that he was staying at the residence for a few days and that he did not know where Harfoush and J were at that time. He

was then returned to the residence. Meanwhile, Detective Rourke had been questioning Peachey, who informed him that one of the short-barreled shotguns belonged to Paquette, whereupon Paquette was brought outside again for further questioning. Both Detective Rourke and Corporal Damren report that Paquette initially denied knowledge of any guns, but subsequently conceded that one of the shotguns was his. About this time, Corporal Damren went to question the occupants of a vehicle that pulled into the driveway of the apartment complex. According to Damren, he recognized both the driver and the passenger as individuals subject to bail conditions. A search of the two occupants yielded 10 bags of heroin. As this was transpiring, Detective Rourke continued to question Paquette. According to Rourke, Paquette stated that he brought the shotgun from Washington and that he knew that it was illegal for him to possess it.

## Discussion

Paquette contends that the search warrant was unconstitutional and that the search of Dorage's vehicle and seizure of the shotguns violated his constitutional rights because the warrant "does not describe which car (or cars) to search, or how an officer's discretion would be limited in deciding which cars to search." (Motion to Suppress, Docket No. 53, at 2.) According to Paquette: "With respect to cars, the warrant became a general warrant which allowed the deputies to determine, without any judicial supervision or oversight, which cars they would search. . . . . A search warrant that allows the officers to search any car at, or arriving at, a multi-unit apartment complex, which apparently had at least nine apartments, is overbroad." (Id. at 2-3.) In addition to refuting the suggestion that the warrant was overbroad or general, the Government attacks Paquette's ability to challenge the search, claiming he lacked a reasonable expectation of privacy vis-à-vis Dorage's vehicle. (Gov't Resp., Docket No. 56, at 3-4.)

A.      **Expectation of Privacy**

"Fourth Amendment rights are personal, and a proponent of a motion to suppress must prove that the challenged governmental action infringed upon his own Fourth Amendment rights." United States v. Kimball, 25 F.3d 1, 5 (1st Cir. 1994). In Kimball, the First Circuit held that a passenger in a motor vehicle has a cognizable Fourth Amendment interest in not being subjected to an unreasonable seizure, or traffic stop. Id. Also at issue in the case was the separate question of what expectation of privacy a passenger has in a motor vehicle in relation to a search of its contents. Id. at 9. According to the Court: "Standing to challenge a search presents issues separate and distinct from standing to challenge the stop." Id. Although the Court found standing to challenge the seizure, it held that the defendant lacked standing to challenge an inventory search conducted pursuant to an impoundment of the vehicle. Id. With respect to standing to challenge the search, the First Circuit held that the defendant "must show that he had a reasonable expectation of privacy in the area searched and in relation to the item seized." Id. at 9 (quotation marks and citations omitted). A showing of reasonable expectation must be two-dimensional: "The defendant must show both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable." Id. (quotation marks and citations omitted).

Paquette argues that he has an expectation of privacy under these circumstances because the shotgun was concealed in the car, he owned the shotgun and stated his ownership interest to the officers following the search and nobody can say who was most frequently the operator of the vehicle. He also posits that he has standing to challenge the warrant because he was an overnight guest at the residence. (Def's Reply, Docket No. 60, at 1-2.) I do not believe that Paquette's expectation of privacy within the residence, by virtue of being an overnight guest,

overrides the inquiry into his expectation of privacy in the trunk of Dorage's vehicle. The standard requires a showing of a reasonable expectation of privacy *in the area searched*: the trunk of Dorage's car. First Circuit precedent reflects that, in general, "standing"[1] does not exist to challenge a search of a vehicle when the defendant neither owns nor is in possession of the vehicle in question. United States v. Maguire, 918 F.2d 254, 261 (1st Cir. 1990) (citing cases). In my view, the facts and circumstances related in the police reports are not sufficient to establish Paquette's standing. They reflect that Paquette was neither the owner nor the individual in exclusive possession of the vehicle. Although these factors are not dispositive, see Rakas v. Illinois, 439 U.S. 128, 143 (1978) (holding that "distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control"), these factors place Paquette among the mine run of other defendants who have been held to lack standing to challenge a search of a trunk compartment. See, e.g., Rakas, 439 U.S. at 148-49; Maguire, 918 F.2d at 261; United States v. Barragan, 379 F.3d 524, 530 (8th Cir. 2004); United States v. Baker, 221 F.3d 438, 441-42 (3d Cir. 2000). Paquette's ownership of the article seized does not automatically confer standing. See United States v. Goshorn, 628 F.2d 697, 700 (1st Cir. 1980).

Conceivably, Paquette might be able to establish both "historical use" of the vehicle and that he was able to "regulate access" to it, in light of the fact that it had served as his conveyance over a period of weeks. However, the police reports are not ideally suited to demonstrate Paquette's subjective expectations of privacy[2] and the First Circuit has cautioned that "the purchase necessary to come to grips with an allegedly illegal search or seizure . . . does not automatically devolve upon every accused." United States v. Aguirre, 839 F.2d 854, 856 (1st

---

[1] Following the First Circuit's lead, I recognize the nomenclature is imprecise, but I use the phrase "standing" in reference to this threshold requirement. See United States v. Romain, 393 F.3d 63, 68 (1st Cir. 2004).
[2] For example, the reports are silent as to whether either shotgun was secreted within a bag or other private container to which Paquette has exclusive access.

5

Cir. 1988). Even if a subjective expectation were established on this record, I am not inclined to find that society would consider it reasonable for an individual to expect to keep private from a vehicle owner with whom he is traveling the fact that he has placed a firearm in the trunk and, in any event, the record reflects that the presence of the shotgun was known at least to Paquette's fellow traveler Peachey. Accordingly, on this record I conclude that Paquette lacks standing to challenge the constitutionality of the search of Dorage's vehicle. In any event, even if Paquette has standing to challenge the search of the vehicle's trunk, it is apparent that the warrant authorizing the search of the vehicle was supported by probable cause and was reasonably limited in its scope and that the connection between the residence and the vehicle in question made the search reasonable.

**B.     The Warrant**

"The Fourth Amendment forbids general warrants so as to prevent law enforcement officers from rummaging through an individual's belongings at will." United States v. Beckett, 321 F.3d 26, 33 (1st Cir. 2003) (citing Andresen v. Maryland, 427 U.S. 463, 480 (1976)). As set forth in my factual recitation, the warrant in question included as places and things to be searched the "residence" (described as "a first floor front apartment (apartment #9)") and "motor vehicles that are present at, and/or arrive at said residence." The common sense reading of the warrant is that it conditions the officers' authority to search a vehicle upon the vehicle's presence or arrival at apartment 9. In other words, the vehicle must be associated with apartment 9. Moreover, the warrant appropriately limited the officer's ability to seize items discovered during any vehicle search.

### C.      Wong Sun v. United States

Paquette ends his motion with an argument that the seizure of the shotguns was unreasonable because it was not expressly authorized by the warrant. He also argues, by extension, that it was inappropriate for the officers to question him concerning the shotguns. According to Paquette, because his statements related to the shotguns were obtained solely as a consequence of an unlawful seizure of the guns, his statements to the officers must be suppressed as "fruit of the poisonous tree" in accordance with Wong Sun v. United States, 371 U.S. 471 (1963). In support of this aspect of his motion, Paquette observes that the warrant authorized the seizure of firearms "in close proximity to illicit drugs and contraband." Because there were no drugs found in Dorage's vehicle and because possession of a short-barreled shotgun is not *per se* illegal, Paquette argues that it was unconstitutional to seize the guns and question him regarding them. (Motion to Suppress at 3-4.)

Although Paquette is correct about the limitation stated in the warrant, the theorem he attempts to build from that factual premise is flawed. Under Terry v. Ohio, 329 U.S. 20 (1968), officers are allowed to briefly detain and question a suspect in order to confirm or dispel their suspicions about his involvement in unlawful activity, provided they possess reasonable suspicion concerning that involvement. Paquette fails to cite any authority for the proposition that officers, during the execution of a search warrant, may not conduct Terry-style questioning that is not directly related to the objective of the warrant. Although I have not found a case squarely on point, strong persuasive authorities reflect that Paquette's counter-intuitive proposition is well out of bounds. Cf. Michigan v. Summers, 452 U.S. 692, 702-04 (1981) (holding that officers executing a search warrant at a residence may detain a resident for the duration of the search); United States v. Brignoni-Ponce, 422 U.S. 873, 881-882 (1975)

7

(observing in the context of a roadblock case that "suspicious circumstances" unrelated to the purpose of the roadblock can justify questioning).

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response.

Brignoni-Ponce, 422 U.S. at 881 (quoting Adams v. Williams, 407 U.S. 143 (1972)). Upon the discovery of two short-barreled shotguns during the execution of a search warrant in connection with a drug trafficking investigation, it was reasonable for the officers to conduct an ancillary investigation into the ownership and registration of the weapons. During the course of the officers' questioning, according to the only record available at this time, Paquette not only conceded ownership over one of the shotguns, but also conceded that he knew it was illegal for him to possess the weapon. Paquette's confession thus afforded the officers with probable cause to believe that the shotgun was evidence of a crime and to seize it.[3] Because the discovery of the shotgun and the questioning concerning it did not offend the Fourth Amendment, Wong Sun is not implicated in this case.

**Conclusion**

For the reasons set forth herein, I **RECOMMEND** that the court **DENY** the defendant's motion to suppress (Docket No. 53).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the

---

[3] Paquette disavowed ownership of the second shotgun, which was claimed by Dave Peachey. Accordingly, he does not have standing to challenge the seizure of the second shotgun. Cf. United States v. Miller, 589 F.2d 1117, 1131 (1st Cir. 1978) ("[O]ne who denies any interest in luggage has abandoned the property and thereby loses any standing to challenge an ensuing search.").

district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated April 12, 2005

9